Thank you, Your Honor. May it please the Court, I'm Robert Jobe, and I'm appearing today on behalf of the Petitioner Navtej Singh. As you're aware, this is the second time that this case has been before the Court, and the recent decision in Abdislan suggests that the first petition for review that we filed here may have been untimely. Now, this isn't an issue that the government has raised, but I wanted to address it because when we were here the last time we filed a petition for review, the government made a motion to dismiss, suggesting that our petition wasn't late but, in fact, was premature. The Court never ruled on that, and instead the government filed a motion to remand, which the Court agreed to do. It exercised its jurisdiction and it remanded this case. The government also asked this Court at that time to exercise its jurisdiction and stay Mr. Singh's removal during the pendency of proceedings before the Board. The Court exercised its jurisdiction and it did that. The case went to the BIA. Pursuant to this Court's order, the BIA remanded it to the immigration judge, and the immigration judge issued a directed order. So it's our view that the issue, you know, the timeliness of that first petition is irrelevant at this stage in the proceedings because the law of the case is that at that point the Court exercised jurisdiction, and certainly our most recent petition for review is timely. But I wanted to start with that and see if there are any questions from the Court with regard to jurisdiction. Turning then to the merits, I mean, it seems to us that the real issue here is our second theory of the case because we believe that the evidence is not only compelling but overwhelming, that Mr. Singh was persecuted at least in part. That's the standard, the pre-real ID standard that we're dealing with here. Was he persecuted at least in part because of his familial relationship to Harjeet Singh? And we feel that the evidence on this is, like I say, overwhelming. On page 725 of the record, this is a report that was prepared by the Danish government. They interview a number of human rights activists and attorneys in Punjab, and there's a consensus that the modus operandi of the Indian security forces when they can't detain a terrorism suspect, the individual that they're interested in, is that they target the family. On page 725 of the record, you know, one human rights lawyer says, throughout India, relatives are at risk of being arrested instead of the suspect if the latter was not there. The only person who says otherwise in this report is a lawyer named Navkiran Singh, who says that members of families of individuals who have supported the Khalistan movement are not at risk of being falsely accused. So we actually contacted Navkiran Singh, and his statement is in the record here on page 1900. Let me just tell you my concern. I mean, I understand. I guess I would understand your case a lot better if what had happened here is your client had been targeted for some kind of retaliation. Right. You know, just they weren't trying to get any information from him, but just were, you know, trying to get at the real person they were interested in through him, and they had picked him because of this family tie. That's more like the Basin case that we have. And I guess I have a hard time seeing how this is different from the Dinu case, where, you know, what they're doing is they're targeting people who they think might have information as to the whereabouts and as part of what at least seems like a legitimate criminal investigation. Well, you know, we're not contesting the fact that ultimately the investigation here has a legitimate purpose, but that doesn't mean that the means by which they're conducting this investigation are also legitimate. I mean, in this case, let me just give you a couple sites of the record that I think are telling. You know, consistent with the background documents, when Mr. Singh's father was first arrested, when he was released, it says, Officer Kumar, when he released my father, he warned him that our family would suffer serious consequences for associating with a Khalistani family. That's on page 2365 of the record. Later, when they began to receive phone calls, and again, we think these came from the police, but they were receiving phone calls saying that we should discontinue our relationship with Harjeet Singh. This is not just about gathering information. They're upset that they have this familial relationship. They're joining through marriage this family that the government considers to be Khalistani. I guess what I would say, Your Honors, on that point, let me give you a hypothetical. Turn the tables here a little bit. But, you know, when I think about this, I think, well, let's say that there was a crime that was committed in an African-American neighborhood. And what the police did, therefore, is they started arresting all the African Americans and questioning them about, well, this suspect, do you know anything about this crime? You're black. You must know something about this crime. And along the way, they tortured them. I don't see how you could possibly say that those individuals who were arrested and tortured weren't targeted, at least in part, the standard, because of their race. And same thing here. Given the background conditions and given what the police. Well, let's just say in your hypothetical that they targeted only people who were friends with the suspect, all of whom happened to be African Americans. And then I would say that, like here, the reason they've targeted those people is not because of their race, but because they have a tie that might suggest they have information as to where the suspect is. I think ultimately, from my perspective, this is really a question about persecution versus prosecution. No doubt they have the right to detain these people and question them. But that's not what they're doing here. And the background evidence says that when a terrorism suspect is not detained, they can't find him, they don't just question family members. They arrest them, they sometimes hold them hostage, and they brutalize them. And that's not legitimate. And, again, the standard here is simply we only have to show that one reason that Mr. Jobb had a relationship with Harjeet Singh. I just don't see as a matter of fact how you could deny that that played some role in his arrest. Certainly, if they hadn't tortured him, there would be not — we wouldn't have any complaints here. But it seems to me that you can't deny that at least in part he was targeted because of his familial relationship. And it's the fact that he was therefore arrested and tortured after that that makes him eligible for asylum. Mr. Jobb, I don't think you had a chance to answer about the one man who had a different story. You were going to say you interviewed him. Oh, yes. Navkiran Singh, the — you know, he's the person that's referred to in the report suggesting that these individuals might not be falsely accused. But on page 1900, we got a statement from him. And Navkiran says that, from my experience as a human rights lawyer, I have dealt with hundreds of cases of such nature where close relatives of the people who are wanted by the police are either tortured in order to gain information or cases in which these close relatives have actually lost their lives. He's talking about hundreds of cases. And he was the one dissenter in the Danish report. The modus operandi of the police here is crystal clear. And the statements that were given to this family that they need to disassociate, they shouldn't have any connections to this Khalistani family. And if not, they were told, then your family will suffer serious consequences. I mean, it can't get any more plain than that. This is direct evidence of motive. We don't need to supply direct evidence, but we have it in this particular case. I'll reserve the balance of my time. May it please the Court, Nicole Prairie on behalf of the United States Attorney General. This is not a mixed motive case. Substantial evidence supports the agency's finding that Singh's interrogations were prompted by a criminal investigation of the high-profile murder of Punjab's chief minister and the jailbreak of some of the suspects. Not only was Navtej Singh an extended family member of one of the suspects, he also had information about Gil. He testified that after 1997, he started watching over the land of the suspect, of Gil's land, and accepting money and sending it to the United States. So he had ongoing contact with Gil. We also know that this is a major case. There are news articles in the record, tons of them. One of them was actually pointing out, called Terrorist Owns Land at Latala, talking about Gil's land in India. Also, the Central Bureau of Investigation in India applied for the extradition of these suspects. It was a major investigation. We can see in the record, even Harjit Singh Gil's declaration states that the police started investigating Singh's assassination, going after anyone who might have connections with police suspects. His declaration also talks about how his mother was still in contact with the village mayor, and who was talking about how police would visit the land on several occasions, and they were still visiting the land to see if anybody returned from the United States or Canada. In an article in the record on page 1753, it notes that Amnesty International was concerned for the safety of hundreds of individuals, including social activists, lawyers, human rights defenders, and they were being illegally detained in connection with the escape of the four detainees from the jail. Now, the government acknowledges that Singh was tortured here, which is why he received protection under the Convention Against Torture and is now being removed to India. But in order to get asylum or withholding of removal, he needs to show that he was actually persecuted on account of his political opinion or as a member of this particular social group that he alleges. So what does on account in the family relation context mean if it – if not that, hey, they singled me out because I have this family connection to them? It would be that he was persecuted because of the family connections. But when we look at the incident where he was tortured by the Indian police on November 28, 2004, we can look at his testimony. And what they did was they brought him in and asked about his brother-in-law. He testified that he told them that he speaks to Gill very little, and if at all, he speaks about family matters, not regarding politics. They asked him to call his brother-in-law. They asked him what they talked about. They asked him to get information about the people who escaped from jail and notified him that they were indeed investigating whether or not Harjeet was involved in helping these guys escape from the Burial Jail. So it's the fact that they were asking him, they were trying to get information from him, that's what makes this not on account of his family relation? Exactly. It falls more within the rubric of DINU, where there's a legitimate police investigation. There's nothing in the record compelling the conclusion that they were asking him questions because he, just because he's the brother-in-law. So let's say they just didn't ask any questions. They just brought him in just like they did exactly the same things to him that amounted to torture, held him for five days and just let him go. Then you would say that's on account of family relation? Not necessarily, Your Honor. I mean, we'd have to look. If they're not asking him any questions. Right. They just, I mean, that's what I'm saying. The reason this guy ends up being taken into custody, you have to concede, it's because he has this family connection to them. No? Sure. The initial reason why police want to talk to them certainly can be the family relationship, but we also know that they were talking to many other people, other people who aren't family, and there were other family members such as the uncle, a mother, and there were two cousins who were also in the record who were not spoken  So it's not necessarily the family relationship, but we know that he's a family member who potentially has information which he admits to through the family relationship. I'll just ask you a question. Don't answer it if you don't want to. But some of these immigration cases, I wonder why we're here. I mean, this guy was tortured. You say he's tortured. Why is it you don't want to let him have asylum? Well, Your Honor. I know. I shouldn't say this, but doesn't the government have something better to do than to waste its money in this time of such limited resources, prosecuting this case for a guy who's going to get relief for torture and you don't want to give him relief? Is there some reason that doesn't come to mind? Your Honor, he simply doesn't meet the standard for asylum. But we've got all kinds of policies in your department about reexamining all these cases and sending away the criminals and using prosecutorial discretion in cases where you don't really. Are you trying to establish a legal principle? Is that why we're here? No, Your Honor. Your Honor, this case is simply about Mr. Singh wanting to get an overturn once the his applications for asylum and withholding of removal are granted. But here the government maintains he just hasn't met that burden of proof. It is his burden. And look how many. You've got 11 million people here who probably could be deported. But the government says we're not going to go after all those people. Only when there's a good reason to do it. I mean, I don't really recall. Has he committed crimes? Is he a danger to society? There's no evidence in the record of that. But he does have protection under the United States Convention Against Torture. He is not being removed to India. So that's really not at issue in this matter. And as far as to respond to Mr. Job's arguments about the expert testimony, the immigration judge did consider the expert testimony in this case in granting Mr. Singh cat relief. But there's also information in the record that says, according to a 1997 Canadian report, that Sikhs with some slight perceived connection to militancy through a family member would not now be targets of the Punjab police. Another State Department 1995 country report talked about the visible progress in correcting patterns of abuse by the police. And in fact, one of the reports said that women were also targeted. So this really isn't about just the men being targeted in the family or only family members. This is a huge investigation. Scalia, you're going to chip all the women out. I'm sorry? That's it. Okay. It's also important, Your Honors, to look at the timeline of what happened here when, after the assassination of the chief minister in Punjab, the police did bring in Singh's father for questioning and asked them about whether he had talked to Singh and asking about the engagement ceremony in 1995 and were any of the other suspects there and questions on that line. The father ultimately lies to police and says there is no engagement with his daughter and Gil anymore, and the police don't contact him again until they find out about the lie. She had come to India, has the last name Gil. They find out that Singh's father had lied to the police and they questioned him again. It's after that point that they also start questioning Singh and talk to him once or twice a year about have you talked to your brother-in-law and what did you talk about. It wasn't until the escape from jail, the four men escape, that the police end up bringing in Singh for further questioning. And again, in January 26, 2004, that's four days after the men escaped from the jail, the police questioned him again about whether he had talked to his brother-in-law, had he said anything about the escapees, did he know anything, and did he help. There's just no evidence in the record that the police were questioning him or doing anything because he's the brother-in-law, but more so to get information under DENU. And there's no evidence as well as political opinion. In those mixed motive cases that Petitioner cites to in his briefs, in all of those cases, there was some accusation or some type of finding by the police or the persecutors that he was those Petitioners or applicants were involved in some of the activities. Here we don't have that. He's not arguing that the police accuse him of being involved. Right. But the only reason the police have for singling this guy out is that he's the brother-in-law. Right. But the status as being the brother-in-law can't immunize him or automatically place him into a protected class of people. He still needs to show that he's persecuted on account of that relationship. And the record just doesn't compel that finding. His testimony talks about the police asking him about questions about where his brother-in-law is. Has he talked to them? What do they talk about? And, in fact, the anonymous phone calls that counsel talked about where they brought up the familial relationship, it's never been established who was making those phone calls. Can you just give me a quick example, because your time is almost up, a set of facts that would meet the on-account-of-family-relationship requirement? The familial relationship prong is difficult because I think right now we have, when we're looking at particular social groups of family members, we only have dicta in Ninth Circuit cases. But just make up a hypothetical set of facts that would meet that requirement. Just so I can contrast it with what you say doesn't meet it. Well, here we have there's a board decision, matter of H, which talks about clans. It's not necessarily a proper family the way we're talking about it here. But they talked about the clan and how a clan could be a particular social group because all of those people were targeted. And then so in that, in matter of H, the board found that there was an on-account of, there was persecution on account of being in that group. And that's different here where we have other family members, uncles and cousins, who are not targeted. Okay. Thank you. Thank you, Your Honors. It's interesting that the government cites that 1997 report from Canada as evidence that family members are not targeted because what it says is that there are exceptions to the general rule that people are safe nowadays, such as people with a local history of abuse and militants together with their close relatives. That's on page 651. We have overwhelming country conditions evidence on page 1349. There's a report that says the police routinely detain and threaten family members of the targeted individual if they can't find that person. Our expert witness says it's very common for the Indian authorities to crack down on family members of individuals they can't locate. Of course, other people were arrested and questioned or questioned in relation to the killing of Bhiat Singh. But there's no evidence in this record that any of those people were tortured. There's no evidence that any of that questioning went beyond an effort to gain information. But in this particular case, consistent with the modus operandi of the Indian authorities, this individual was brutally tortured not once but twice. And that's what separates his case from these other cases. When you take that into account in the context of current country conditions and the threats that they received over the phone, where they were specifically told, I just want to quote this once again, the caller never identified himself, but he kept insisting that we should end our relationship with Harjeet's family. He kept warning us that if my sister married Harjeet, our family would suffer serious consequences. Come on. This is overwhelming evidence that he was targeted at least in part, that's all we need to show, at least in part because of his familial relationship with Harjeet Singh Gill. Thank you, counsel. Case Miss Aggie will be submitted. The Court will stand in recess for the day.
judges: Reinhardt, Noonan, Watford